# Exhibit "D"



# The Federal Reserve Board

February 2, 2004

David Teitelbaum, Esq.
Sidley Austin Brown & Wood LLP
1501 K Street, N.W.
Washington, DC 20005

Dear Mr. Teitelbaum:

This is in response to your letters on behalf of Merrill Lynch Bank USA, Salt Lake City, Utah ("Merrill Lynch Bank"), regarding the application of section 106 of the Bank Holding Company Act Amendments of 1970 ("section 106") to certain lending programs offered by Merrill Lynch Bank and its affiliate, Merrill Lynch Private Finance Inc. ("MLPF").[1]

Merrill Lynch Bank and MLPF offer securities-based loans--that is, loans collateralized by securities or other marketable investment assets ("securities")--subject to the requirement that the securities collateralizing the loans be kept in collateral accounts with their broker-dealer affiliate, Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("MLPF&S").[2] Customers are not charged for establishing or maintaining the collateral accounts or for transferring securities to the collateral accounts. Customers are not obligated to trade in the collateral accounts or any other accounts or to purchase any other products or services from Merrill Lynch Bank, MLPF, MLPF&S, or any of their affiliates. Customers are not required to maintain any securities in the collateral accounts beyond those necessary, in the credit judgment of Merrill Lynch Bank or MLPF, as the case may be, to support the credit extensions. All securities in the collateral accounts are pledged as collateral to support the securities-based loans extended by Merrill Lynch Bank or MLPF, as the case may be.

Customers must obtain prior approval from Merrill Lynch Bank or MLPF, as appropriate, before withdrawing assets from the collateral accounts. No fee is charged for effecting such withdrawals. You have indicated that all withdrawals from the collateral accounts require prior approval from the lender in order to ensure the safety and soundness of the securities-based lending programs. You also have stated that the policy of both Merrill Lynch Bank and MLPF is to grant customer requests to withdraw assets from a collateral account as long as the lender's collateral requirement would continue to be met after the withdrawal. You have further represented that the bank and MLPF would deny a request for withdrawal of excess collateral from a collateral account only in extraordinary circumstances, such as when a customer requests to withdraw all excess collateral from an account that is experiencing a precipitous decline in the value of a concentrated position.

The bank and MLPF generally allow customers to trade securities held in the collateral accounts, and MLPF&S charges customers its standard brokerage fee for any trades made by customers that involve securities held in the collateral accounts.[3] Customers are not restricted in their ability to maintain brokerage accounts with other securities firms not affiliated with Merrill Lynch Bank or MLPF.

For securities-based loans made by Merrill Lynch Bank and MLPF, the customer is required to ensure that the value of the securities in the collateral account equals or exceeds the lender's collateral requirement for the loan on an ongoing basis. MLPF&S monitors the value and composition of the securities in the collateral accounts on at least a daily basis. If the value of the securities in a collateral account falls below the collateral requirement for the related loan, the customer will be asked promptly to take steps to resolve the collateral shortfall--for example by placing additional securities in the account or by paying down the outstanding loan balance.

Section 106 generally prohibits a bank from conditioning the availability or price of a product on a requirement that the customer obtain another separate product from, or provide another separate product to, the bank or an affiliate of the bank.[4] For the following reasons, I believe that securities-based lending programs conducted in the manner described above and in the bank's correspondence with the Board are permissible under, and consistent with the purposes of, section 106.

By requiring collateral for a securities-based loan, Merrill Lynch Bank and MLPF are not requiring that the customer obtain any product separate from the loan itself. A requirement to provide collateral for a loan generally is an integral part of the loan, and, in this case, the securities collateral does not represent a separate product distinguishable from the underlying credit product.[5]

The fact that the bank and MLPF require the pledged securities to be held in an account at an affiliate does not make the collateral, or the account, a product separate from the loan that the collateral secures. The MLPF&S collateral account into which securities-based loan customers of Merrill Lynch Bank and MLPF must place the securities collateral is simply the mechanism that the bank and MLPF have chosen for holding the required collateral. The integral connection between the loan and the collateral account is highlighted by the facts that, as noted above, (i) the bank or MLPF, as the case may be, has a security interest in all the securities in the account; (ii) the customer is not required to place any securities in the account beyond those necessary to satisfy the lender's collateral requirement; and (iii) the customer is not required to pay a separate fee to establish or maintain the account.[6]

The fact that borrowers are permitted to hold securities in the collateral account beyond those minimally required to satisfy the lender's collateral requirement and to trade securities in the collateral account does not alter my conclusion. Allowing a customer to trade securities, or to place excess securities, in a collateral account underlying a securities-based loan enhances customer choice without reducing the integral connection between the loan and the collateral account. In this regard, you have represented that the customer is **allowed** to trade and to deposit excess securities in the account, and is not **required** to trade or deposit excess securities. Thus, any trading in the account or placement of excess securities in the account is voluntary and not the result of a requirement that the customer use, obtain, or provide any separate product or service to obtain credit from the bank.[7]

Similarly, my opinion is not affected by the fact that, in the event that the value of the securities in the collateral account falls below the lender's collateral requirement for the related loan, the customer must eliminate the collateral shortfall. This requirement is an integral and ordinary part of securities-based lending, including traditional securities-based lending by broker-dealers. Moreover, as noted above, the customer is permitted to resolve the shortfall by, among other things, adding additional securities or cash to the collateral

Case: 4:14-cv-01336-CEJ Doc. #: 13-1 n Filed: 03/27/14s Page: 4 of 5 PageID #: 184

account or reducing the outstanding loan balance (neither of which option would require the customer to purchase brokerage services from MLPF&S). Accordingly, the collateral maintenance requirement does not require the customer to obtain or provide any separate product or service in order to obtain credit from the bank.

The text and legislative history of section 106 make manifest that Congress did not intend the statute to impede the ability of banks to conduct the business of banking in a safe and sound manner. Congress was aware that banks customarily impose requirements on borrowers to mitigate the credit risk associated with loans (including restrictions designed to obtain and protect collateral pledged as security for loans); and Congress included several exceptions in section 106 to ensure that the statute would not render such normal risk mitigation practices illegal.[8] In this case, the bank and MLPF require their securities-based loan customers to place the collateral in an account at MLPF&S in order to protect the financial interest of the bank and MLPF. According to the bank, this collateral requirement, among other things, assists the bank and MLPF to (i) obtain detailed and timely information regarding the value of collateral; (ii) ensure that the collateral will be safeguarded and managed appropriately; and (iii) ensure that instructions with respect to the collateral will be executed promptly and consistently.

After reviewing all the information provided by Merrill Lynch Bank, I have concluded, for the reasons stated above, that securities-based lending programs conducted in the manner described in this letter and in the bank's correspondence with the Board, are permissible under, and consistent with the purposes of, section 106.[9]

This opinion is based on the specific facts and representations you have provided, and any material change in these facts or representations could result in a different conclusion and should be reported to Board staff. If you have any questions about this matter, please contact Mark E. Van Der Weide (202/452-2263) or Andrew S. Baer (202/452-2246) of the Board's legal staff.

Sincerely,

(signed) J. Virgil Mattingly, Jr.

J. Virgil Mattingly, Jr.
General Counsel

cc: Federal Reserve Bank of New York

---

**Footnotes**

1. 12 U.S.C. § 1972. Return to text

2. For purposes of the section 106 analysis in this letter, I have assumed that MLPF is a subsidiary of Merrill Lynch Bank. Currently, MLPF is an affiliate of Merrill Lynch Bank that the bank intends to acquire and operate as a subsidiary in the near future. Merrill Lynch Bank plans for MLPF to continue to offer these securities-based loans after the reorganization. Return to text

3. For certain securities-based loans currently made by MLPF, customers may not trade securities held in the collateral accounts without prior approval from MLPF for each trade. On the other hand, for securities-based loans currently made by Merrill Lynch Bank and for securities-based loans currently made by MLPF to customers who have retained a professional money manager to manage their assets, customers may trade securities held in the collateral accounts without prior approval from the bank or MLPF, as the case may be. Return to text

4. 12 U.S.C. § 1972(1)(A)-(D). Return to text

5. See Board's Proposed Interpretation and Supervisory Guidance on Section 106, 68 *Federal Register* 52024, 52027 (Aug. 29, 2003). Return to text

6. *Cf. Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988 (7th Cir. 1991). Return to text

7. The fact that a customer must pay MLPF&S its standard brokerage commission if the customer decides to effect trades in the collateral account also does not change my opinion because the customer is not required to trade in the account and trades effected by the customer in the account generally would be unrelated to the loan. Return to text

8. See 116 Cong. Rec. S15708 (daily ed. Sept. 16, 1970) (Statement of Sen. Bennett). Return to text

9. Nothing in this letter affects the obligations of Merrill Lynch Bank, MLPF, and their affiliates, or any other lender, to comply with the Board's Regulations T and U (12 C.F.R. Parts 220 and 221), or alters the manner in which those regulations apply to securities-based lending. Return to text

▲ Return to top

---