UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| PATRICK RYAN BRAY, | : |
| Plaintiff, | : |
| | : No. 4:14-cv-01336-CEJ |
| v. | : |
| BANK OF AMERICA, | : |
| Defendant. | : |

**DEFENDANT BANK OF AMERICA, N.A.'S
OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Pursuant to Rules 26(a) and 37 of the Federal Rules of Civil Procedure, Defendant Bank of America, N.A. ("BANA" or "Defendant"), by its undersigned attorneys, hereby opposes Plaintiff Patrick Ryan Bray's ("Bray" or "Plaintiff") *Motion to Compel Defendant Bank of America N.A. to Produce Interrogatories and Document Requests* (the "*Motion*").

## I.  INTRODUCTION

This case is unique in that Bray has fully litigated – and lost – his anti-trust, tort, and contract claims against his former employer, Merrill Lynch, Pierce, Fenner & Smith Incorporated, in a Financial Industry Regulatory Authority (FINRA) arbitration action.[1] In an attempt to take a second bite at the proverbial apple, Bray reasserts the *same exact* claims against BANA that he asserted in *Merrill Lynch v. Bray* – an anti-tying claim, defamation claims, and

---

[1] This action that took place from November 4, 2013 through November 13, 2013 is captioned, Merrill Lynch, Pierce, Fenner & Smith Incorporated v. Patrick Ryan Bray, FINRA Case No. 12-00084 (hereinafter "*Merrill Lynch v. Bray*"). Merrill Lynch sued Bray for the balance due under the terms of a loan and Promissory Note he executed at the commencement of his employment. Bray filed Counterclaims. On November 12, 2013, after seven days of evidence and testimony from fourteen witnesses (including four expert witnesses) called by Bray, the arbitration panel granted Merrill Lynch's Motion for Directed Verdict as to Bray's claim under the Anti-Tying Statute. Just over a week after the hearing concluded, the arbitration panel issued an Award, which denied Bray's remaining claims and awarded Merrill Lynch the $335,491.88 balance of the promissory note, plus pre-award interest ($20,254.98), and attorney's fees.

harassment claims.  On March 27, 2014, BANA filed a *Motion to Dismiss* Bray's Complaint with prejudice for failure to state a claim upon which relief can be granted (**Doc. No. 12**), and is awaiting the Court's decision.[2]

Despite the fact that Bray's claims against BANA are identical to his claims against Merrill Lynch and involve the same witnesses, Bray now takes the position that this case somehow requires completely separate discovery.  Indeed, Merrill Lynch produced over ***3,380 documents*** and ***101,623 pages of emails*** to Bray in *Merrill Lynch v. Bray*.  Bray has had these documents for nearly a year.  Moreover, Bray recently received the entire set of documents and emails on July 18 and July 21, 2014, in response to a Subpoena BANA issued to Merrill Lynch.  Not only did Bray receive the entire set of documents and emails, he also received additional documents related to *Merrill Lynch v. Bray*, including transcripts and exhibits from the *Merrill Lynch v. Bray* hearings, all communications between the parties and/or FINRA, all written discovery, including all written responses thereto, exchanged between the parties, and all third-party subpoenas and any responsive documents thereto.  Additionally, BANA produced another 579 pages as an initial production in this matter.  BANA has also agreed to either produce additional documents or investigate whether there exist additional responsive documents to Interrogatory Nos. 6, 8, 9, 13, 16, 17, and 21 and Document Request Nos. 13, 14, 16, 17, 18, 19, 21, 22, 25, 26, 27, and 28.  Against this backdrop, it is hard to imagine that any additional relevant information exists.

BANA has engaged in a good-faith effort to respond to Bray's First Set of Interrogatories ("Interrogatories") and Request for Production of Documents and Information ("Document

---

[2] On July 29, 2014, the Court granted BANA's *Motion to Transfer Venue* from the Middle District of Florida to the Eastern District of Missouri (Doc. Nos. 9, 30).  Given that BANA's response is due on Monday, August 4, 2014, BANA is responding in accordance with the Middle District of Florida's Local Rules.  However, BANA will cite to both Florida and Missouri Federal law in its response.

Requests"). However, many of Bray's overly broad discovery requests represent the fishing expedition that Bray wishes to engage BANA in. As a result, BANA appropriately objected to a number of the requests. For these reasons and the reasons outlined below, BANA respectfully requests that the Court deny Bray's *Motion*.

**II.     RELEVANT PROCEDURAL HISTORY**

On June 2, 2014, Bray served his Interrogatories and Document Requests. BANA timely served its objections and responses to the Interrogatories and Document Requests. See Responses to Interrogatories attached hereto as Exhibit "A" and Responses to Document Requests attached hereto as Exhibit "B." In all, BANA responded to 35 Document Requests and 24 Interrogatories. As outlined above, BANA produced 579 documents in addition to the well over 100,000 documents and emails produced in the *Merrill Lynch v. Bray* matter. Nevertheless, Bray informed BANA that he was dissatisfied with almost all of BANA's discovery responses and document production.

BANA, in response to Bray's objections and in an effort to resolve the discovery disputes without the Court's intervention, spoke with Bray over the telephone for over two-and-a-half hours on July 15, 2014. Throughout these conversations, and through numerous email communications and letters, the parties were able to narrow down BANA's responses that Bray objected to. See Multiple Correspondences between Janelle E. Fulton, Esquire and Bray dated July 2, 2014 through July 17, 2014 attached hereto as Exhibit "C." Bray also provided clarification on what exactly he was seeking in response to certain Interrogatories (Interrogatory Nos. 6, 8, 9, 13, 16, 17, and 21). Based on this clarification, BANA agreed to investigate whether further responsive documents existed – in addition to the documents BANA has already

3

produced. However, BANA maintained its responses and objections to Interrogatory Nos. 1, 4, 10, 12, 14, and 18 and Document Request Nos. 3 through 12 and 35.

### III.     LEGAL ARGUMENT

#### A.     Legal Standard for a Motion to Compel

Parties may obtain discovery on "any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). However, discovery is not limitless. The party seeking to obtain discovery bears the threshold burden of showing that the requested discovery is relevant. Salvato v. Miley, No. No. 12-0635, 2013 U.S. Dist. LEXIS 81784, at *6 (M.D. Fla. June 11, 2013).[3] If the party seeking to obtain discovery meets this burden, the Court "has discretion to limit discovery of relevant material upon a determination the sought discovery is unreasonably cumulative or duplicative, obtainable from some other source that is more convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs the likely benefit." Belair v. Target Corp., No. 12-0119, 2013 U.S. Dist. LEXIS 10318, at *4 (M.D. Fla. Jan. 25, 2013) (citing Panola Land Buyers, Ass'n v. Shuman, 762 F.2d 1550, 1558-59 (11th Cir. 1985)).[4] This safeguard is in place to prevent parties from going on a "'fishing expedition'" for relevant information. Id. at *5 (citing Linares v. Broward County Sheriff's Office, 347 F. App'x 424, 428 (11th Cir. 2009)).[5]

#### B.     BANA's General Objections Are Appropriate.

##### a.     The Verification Attached to BANA's Responses to Plaintiff's Interrogatories is Proper Under Rule 33 of the Federal Rules of Civil Procedure.

The verification attached to BANA's Responses to Plaintiff's Interrogatories is proper

---

[3] See Nixon v. Enter. Car Sales Co., No. 09-1896, 2011 U.S. Dist. LEXIS 45434, at *4 (E.D. Mo. Apr. 26, 2011).
[4] See Wolfe v. Gallagher Bassett Svcs. Inc., No. 11-1610, 2012 U.S. Dist. LEXIS 54968, at *2-3 (E.D. Mo. Apr. 19, 2012).
[5] See Shirrell v. St. Francis Med. Ctr., No. 13-0042, 2013 U.S. Dist. LEXIS 120790, at *5 (E.D. Mo. Aug. 26, 2013).

under Rule 33 of the Federal Rules of Civil Procedure. Rule 33 provides that: "The interrogatories must be answered: . . . if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1)(B). "[Rule 33] simply requires a corporate party to designate an agent to answer and the sign the interrogatory responses. It is not necessary that the agent be an officer or managing agent of the corporation." Chatman v. Nat'l R.R. Passenger Corp., 246 F.R.D. 695, 700 (M.D. Fla. 2007). The corporate officer or agent need not have personal knowledge of the information sought to answer on behalf of the corporation; it is appropriate to consult with and gather information from other individuals in the corporation. See, e.g., Int'l Ass'n of Machinists v. Amana Refrigeration, Inc., 90 F.R.D. 1, 3-4 (E.D. Ten. 1978). Brenda Brewer is an agent of the corporation, and the language in her verification comports with the requirements of Rule 33.

> **b. BANA is Not Required to Provide an Affidavit to Certify that No Further Documents or Information Exist in Response to Bray's Discovery Requests.**

It is unclear what exact responses Bray is referring to in his last issue with BANA's general objections. BANA can only speculate that Bray is referring to BANA's responses to Bray's Document Request Nos. 2 and 24. Since BANA served its discovery responses on July 2, 2014, BANA has represented to Bray, upon his request, that no further documents exist in response to Bray's Document Request Nos. 2 and 24. See Exhibit C, Letters from Janelle E. Fulton, Esquire to Bray dated July 16 and 17, 2014. Rule 34(a) of the Federal Rules of Civil Procedure provides that discovery may be had of documents that are in the "responding party's possession, custody or control." Fed. R. Civ. P. 34(a). If a document does not exist, then it is impossible for the document to be in the responding party's "possession, custody or control."

There is no requirement in the Federal Rules of Civil Procedure that BANA produce an affidavit stating that no further documents exist. However, as previously conveyed to Bray, BANA will provide supplemental responses to Bray's Document Requests as well as verified, supplemental responses to Bray's Interrogatories that will unequivocally state that no further documents exist responsive to certain Requests.

### C.  BANA's Responses and Objections to Bray's Interrogatories are Proper.

#### a. Interrogatory Nos. 1 and 4

BANA maintains its objections to Interrogatory Nos. 1 and 4, which request BANA to "[i]dentify each and every person providing substantive assistance or answers to these interrogatories" and to "identify each person with whom [BANA] has had communication of any type regarding the subject matter of the litigation." As stated above, BANA provided a proper verification in accordance with Rule 33 of the Federal Rules of Civil Procedure. Not only has BANA complied with Rule 33, BANA also served its Rule 26(a)(1) Initial Disclosures on May 12, 2014, listing the persons likely to have discoverable information that BANA may use to defend the claims brought by Bray, their contact information, and their relevant knowledge. Moreover, with respect to Interrogatory No. 4, it would be extremely burdensome for BANA to list every communication either its former or current employees have had regarding the subject matter of this litigation. Any benefit associated with listing every single person, the type of medium of communications, date(s), who initiated the contact, and the subject matter of the communication is outweighed by the burden associated with producing this information, especially given that BANA has listed the relevant persons likely to have discoverable information in its initial disclosures.

### b. Interrogatory No. 10

BANA maintains its objections to Interrogatory No. 10, which requests BANA to "identify and describe any and all loans from 2007 to present that were prepared where [BANA] acted as the Administrative Agent, the lender of a loan or the only lender of a loan, and required securities such as stocks, bonds, and non-money market mutual funds to not only be collateralized and pledged but mandated these securities be held at an affiliate as a requirement of the loan." BANA has produced all relevant information and documents related to the extension of credit provided to Maritz in early 2010. Bray's anti-tying claims relate to this loan only.

Not only does this request seek information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, it is a clear example of the fishing expedition Bray is engaging in. To respond to Bray's satisfaction would require BANA to review the terms of tens of thousands of loans it closed over the course of several years. Finally, Bray can obtain this information from other sources that are more convenient. For example, he could pose this question to Stephen Bode ("Mr. Bode") and Kevin Knopf ("Mr. Knopf") at deposition.

### c. Interrogatory No. 11

While not waiving its objections, BANA has fully responded to Interrogatory No. 11, which requests BANA to "[d]escribe in detail if [BANA] through its policies and procedures consider Bond Mutual Funds as a traditional banking and/or consider it a product that is an acceptable asset to be required to be placed at an affiliate for security of a loan and not violate the Anti-tying provisions of the BHCA law." Although this Interrogatory is the quintessential request for a legal conclusion, in the spirit of cooperation, BANA answered this Interrogatory.

7

BANA's response that "the bond mutual funds were an acceptable asset for BANA, in its role as an administrative agent, to require Maritz to hold as collateral at its broker-dealer affiliate, Merrill Lynch" is appropriate under the Federal Rules of Civil Procedure and directly answers the question posed. Moreover, Bray can further ascertain the answer to this Interrogatory by simply examining the policies BANA cites to and has provided to Bray. See Fed. R. Civ. P. 33(d).

### d. Interrogatory No. 12

BANA maintains its objections to Interrogatory No. 12, which requests BANA to "identify and describe whether or not [BANA] accepts collateral assignment of securities held at other financial institutions outside of their affiliates or Bank of America's umbrella to protect [BANA's] loan and if so, identify from 2007 to present." As stated above, Bray can ascertain the answer to this Interrogatory by simply examining the policies BANA cites to and has provided to Bray, which includes BANA's specific policies on Marketable Securities. See Fed. R. Civ. P. 33(d). Moreover, Bray's request to have BANA identify "each and every collateral assignment of securities held at other financial institutions outside of their affiliates or Bank of America's umbrella" is overly broad and unduly burdensome, because doing so would require BANA to review tens of thousands of loans issued from 2007 through the present (a seven-and-a-half-year period).

### e. Interrogatory No. 14

BANA maintains its objections to Interrogatory No. 14, which requests BANA to "[i]dentify and describe each loan in the past 10 years the [BANA] had securities collateralized from another broker/dealer that were re-pledged without consent of the [BANA] to a competitor banks loan putting the [BANA]'s loan in a position of its collateral being minimized." As

BANA stated in its response, this request, as written, would require BANA to go through and analyze tens of thousands of loans issued during this ten-year time period. Additionally, this request is incapable of a response because if the securities were "re-pledged without consent of [BANA]," BANA may not be aware that it happened and thus cannot provide an accurate response to this Interrogatory.

### f.  Interrogatory No. 18

BANA maintains its objections to Interrogatory No. 18, which requests BANA to "identify and describe in detail when [BANA] first became aware that the assets that were pledged that are in question in the Plaintiff's complaint should have never been pledged in the first place as most of the monies that were pledged were not an asset of the company but acted as a float for monies that were already spoken for and purchased by the general public on transactional gift cards." BANA cannot respond to this Interrogatory as posed because, as it already communicated to Bray, it disagrees with Bray's statement that "the assets that were pledged that are in question in the Plaintiff's complaint should have never been pledged in the first place as most of the monies that were pledged were not an asset of the company but acted more as a float for monies that were already spoken for and purchased by the general public on transactional gift cards." See Exhibit C, Letter from Janelle E. Fulton, Esquire to Bray dated July 14, 2014.

### g.  Interrogatory No. 19

BANA maintains its objections to Interrogatory No. 19, which requests BANA to "identify and describe in details as to whether it was [BANA] or Maritz that originally offered or made a requirement that the bond mutual funds collateralized in the loan in question of the Plaintiff's complaint be held at [BANA's] affiliate." Since BANA served its discovery response

9

on July 2, 2014, BANA supplemented its response to this Interrogatory. BANA stated that BANA required that InteliSpend's assets that Maritz pledged as collateral be held at a BANA affiliate. As previously conveyed to Bray, BANA will provide verified, supplemental responses to Bray's Interrogatories.

### D. Request for Production of Documents

#### a. E-Discovery

Bray seeks to compel BANA to produce electronic discovery of 10 custodians' email boxes (two of which were produced to Bray in *Merrill Lynch v. Bray*) and approximately 39 search terms for each custodian. With regard to discovery of electronic information, the Middle District of Florida Discovery Handbook states that when resolving a motion seeking to compel or protect against the production of electronic information, the Court will consider, *inter alia*, the need for the discovery, the breadth of the discovery request, and the burden and expense of the discovery. Middle District Discovery Handbook (Sept. 4, 2001) at 21[6]; see Fed. R. Civ. P. 26(b). When taking these factors into consideration, BANA maintains its objections to Document Request Nos. 3 through 4 and 5 through 12.

#### i. Bray Has Not Articulated Why He Needs the Additional E-Discovery.

As an initial matter, with respect to Bray's "need" for the electronic discovery he requests, Merrill Lynch already provided extensive electronic discovery to Bray in the *Merrill Lynch v. Bray* matter, including approximately 101,623 pages of emails from six custodians' email boxes – two of which Bray now requests that BANA re-search (Mr. Bode and Mr. Knopf). Bray received these documents on July 21, 2014 after Merrill Lynch responded to BANA's Subpoena for *Merrill Lynch v. Bray* arbitration discovery.

---

[6] The Eastern District of Missouri does not have a similar handbook regarding e-discovery.

With respect to **Document Request Nos. 3 through 4**, Bray has received over 4,000 pages of emails from Mr. Bode's and Mr. Knopf's email boxes. Specifically, Bray possesses relevant emails from Mr. Bode's and Mr. Knopf's email boxes for the date range of January 1, 2009 through December 31, 2012 using the following search terms: Flippen, Farrell, Ludwick, "Kent Reynolds," Bray, Schutte, AEIS, "American Express," "Prepaid Solutions," Intelispend, Intellispend, Maritz, Glazer, Hutson, Yergensen, Sanders, Ramos, "control agreement," tying, Newbridge, and Valdes.

During the parties' meet and confer telephone conference on July 15, 2014, the only basis that Bray stated as a reason to re-search these email boxes is that he had approximately nine emails involving Mr. Bode and Mr. Knopf from an unidentified source that were never produced in the *Merrill Lynch v. Bray* arbitration. Bray represented that these emails were responsive to the discovery requests in the *Merrill Lynch v. Bray* arbitration and that they should have been produced because the emails hit upon relevant search terms. However, Bray has refused to produce these emails. Indeed, Bray stated that he "will not turn over such documents until compelled to do so as any information that [he] may have are protected work product and could be used for impeachment purposes if further objections arise." See Exhibit C, Letter from Bray to Janelle E. Fulton, Esquire dated July 16, 2014. BANA has since filed a request for documents, including these emails.

With respect to **Document Request Nos. 5 through 12**, Merrill Lynch produced extensive email discovery in the *Merrill Lynch v. Bray* matter (and in response to BANA's Subpoena in this matter), which included communications with the remaining custodians – Matthew Corcoran, Rosalind Marcotte, Licia Gordon-Smith, Randolph Kohler, Patricia Mercurio, and Debra Hellman. BANA understands that these custodians' email boxes were not

11

searched in *Merrill Lynch v. Bray* and that searching these email boxes could theoretically reveal emails that may not have already been produced. Therefore, as outlined below, in the event Bray limits his requested time frame and his requested search terms, BANA will agree to search these custodians' email boxes.

> ii. **Bray's Requested Time Frame and Search Terms are Overly Broad, Unduly Burdensome, Duplicative, Irrelevant, and Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence.**

BANA maintains its objections to Bray's requested time frame and search terms.

Bray's requested time frame for all of the custodians is 2008 through the present, which is approximately an ***additional three years*** to the time period searched in *Merrill Lynch v. Bray*. The only arguable time period relevant to the allegations in Bray's *Complaint* is December 2009 through February 2012 (*i.e.*, the time that Maritz sought to modify the terms of its credit agreement with the lending syndicate through the time period that BANA released the InteliSpend assets as collateral in February 2012). This time period also covers Bray's employment at Merrill Lynch from March 1, 2010 through October 28, 2011. One further exception to Bray's requested time period would relate to David O'Connor whose involvement was limited to October 28, 2011 through December 31, 2011, which in his role as Investigative Manager, he investigated threats Bray made. Therefore, with the exception of David O'Connor, BANA agreed to search the custodians' email boxes from January 1, 2009 through March 31, 2012 using reasonable search terms.

Not only is Bray requesting that BANA unreasonably expand the relevant time frame, he is also requesting that BANA either search or re-search the custodians' email boxes for 39 search terms. Since our meet and confer conference on July 15, 2014, Bray submitted a "revised" list of search terms wherein he narrowed his search terms down from his original 49 search terms.

However, many of Bray's requested search terms are still overly broad, unduly burdensome, duplicative, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.

First, many of Bray's requested search terms are already subsumed within the search terms that Merrill Lynch and Bray previously agreed to and applied to Mr. Bode's and Mr. Knopf's email boxes.  To illustrate, below is a list of terms previously searched in Mr. Bode's and Mr. Knopf's email boxes compared Bray's current requested search terms:

- Farrell → Bray has requested "Sean Farrell"
- Ludwick → Bray has requested "Brian Ludwick"
- Bray → Bray has requested "Patrick Bray," "Patrick Ryan Bray," and "Ryan Bray"
- Schutte → Bray has requested "Maurice.Schutte@ml.com and Mo)
- Intelispend → Bray has also requested @intelispend and InteliSpend (with an uppercase "S")
- Maritz → Bray has also requested @maritz and Steve Maritz
- Glazer → Bray has requested "Matt Glazer"
- Sanders → Bray has requested "Dan Sanders"
- Ramos → Bray has requested "Rick Ramos"
- Tying → Bray has also requested "anti tying"
- Valdes → Bray has requested "Michael Valdes"

Thus, there is no reason to re-search Mr. Bode's and Mr. Knopf's emails, as in instances, the terms as previously searched revealed many more emails than the search terms Bray currently requests.

Moreover, Bray now requests that BANA search for 20 new search terms that were not previously searched for in *Merrill Lynch v. Bray*: syndicate, syndication, BHCA, arbitration, federal, hearing, hide, destroy, trouble, referral, legal, illegal, violation, trial, threats, Florida, investigation, confidential, call me, and Stephen Bode and/or Kevin Knopf.  The use of these relatively common terms (*e.g.*, syndicate, syndication, federal, hearing, legal, illegal, violation, trial, Florida, confidential, etc.) as well as searching for either Stephen Bode and/or Kevin Knopf

13

will produce a large volume of email messages having nothing to do with the issues in this case. By way of example only, searching for "Stephen Bode" in Mr. Knopf's email box will capture every email Knopf ever sent to Bode (and vice versa), many of which will be completely unrelated to this litigation.  Additionally, the terms "destroy," "legal," "illegal," "violation," and "confidential" may be contained in the email disclaimer affixed to every email that comes from a BANA or Merrill Lynch employee or that comes from senders outside of BANA or Merrill Lynch.

Accordingly, BANA respectfully requests that the Court deny Bray's request for additional e-discovery.  In the alternative, BANA respectfully requests that the Court order Bray: (a) to produce any responsive emails he has in his possession, custody, or control that were not produced in *Merrill Lynch v. Bray*; and (b) limit the time frame and search terms.

### b.  Document Request No. 35

BANA has answered Document Request No. 35 to the extent required by the Federal Rules of Civil Procedure.  The defenses outlined by BANA in its *Motion to Dismiss* are indeed substantiated by the well over 100,000 documents and emails produced in the *Merrill Lynch v. Bray* matter and the 579 documents BANA produced so far in this matter.

V. **CONCLUSION**

BANA has fully complied with its discovery obligations and has produced tens of thousands of pages of documents in response to Bray's discovery requests. For the reasons outlined above, BANA respectfully request that the Court deny Bray's *Motion*. BANA also requests that this Court grant oral argument on Bray's *Motion*.

Dated: July 31, 2014

By: /s/ Scott Dickenson
Scott Dickenson (MO No. 50478)
Jack D. Rowe (MO No. 22996)
LATHROP & GAGE LLP
Pierre Laclede Center
7701 Forsyth Boulevard, Suite 500
Clayton, Missouri 63105
Telephone: (314) 613-2505
Facsimile: (314) 613-2801
Email: sdickenson@lathropgage.com
Email: jrowe@lathropgage.com

Janelle E. Fulton
Christopher S. Koller
Lauren Fuiman Cell
*Pro Hac Vice Submissions to be Submitted*
Rubin, Fortunato & Harbison P.C.
10 S. Leopard Road
Paoli, PA 19301
Telephone: (610) 408-2038/2020/2030
Facsimile: (610) 854-1860/4319/4319
Email: jfulton@rubinfortunato.com
Email: ckoller@rubinfortunato.com
Email: lfuimancell@rubinfortunato.com

*Counsel for Defendant Bank of America, N.A.*

## **CERTIFICATE OF SERVICE**

I, Scott Dickenson, hereby certify that a true and correct copy of the foregoing *Opposition to Plaintiff's Motion to Compel* was served via the Court's ECF system and first-class mail, postage prepaid, as follows:

>Patrick Ryan Bray
>4007 Riverview Blvd.
>Bradenton, FL 34209
>pryanbray@msn.com
>
>*Plaintiff*

Dated:  July 31, 2014                                        /s/ Scott Dickenson
                                                                             Scott Dickenson, Esq.