# EXHIBIT "A"

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

PATRICK RYAN BRAY,

            Plaintiff,

        v.

BANK OF AMERICA,

            Defendant.

No. 8:14-cv-00332-SDM-TBM

## DEFENDANT BANK OF AMERICA, N.A.'S RESPONSES TO PLAINTIFF PATRICK RYAN BRAY'S FIRST SET OF INTERROGATORIES DIRECTED TO DEFENDANT BANK OF AMERICA (BANA)

Pursuant to Rule 33(b) of the Federal Rules of Civil Procedure Local Rule 3.03(a) of the United States District Court for the Middle District of Florida, Defendant Bank of America, N.A. ("BANA"), by its undersigned attorneys, hereby responds and objects to Plaintiff Patrick Ryan Bray's *First Set of Interrogatories Directed to Defendant Bank of America* (BANA) ("the Discovery Requests"). These responses and objections reflect BANA's current knowledge and the results of its investigation to date. BANA reserves the right to amend and/or supplement these responses up to and including the time of the trial of this matter.

### GENERAL OBJECTIONS

Defendant BANA makes the following general objections to Plaintiff's Discovery Requests:

1. The Discovery Requests seek the disclosure of documents that are protected by the attorney-client privilege and/or the work product doctrine. Any disclosure of privileged or

protected information is inadvertent, involuntary and unintentional, and is not intended to be a waiver of any privileges or protections.

2. The Discovery Requests and the definitions therein seek to impose a greater burden than is permitted by the Federal Rules of Civil Procedure.

3. The definitions in the Discovery Requests do not define Defendant BANA. For purposes of these responses and objections, BANA shall mean Bank of America, N.A., a National Banking Association with its principal place of business in Charlotte, North Carolina.

4. BANA objects to, and will not produce, documents or witness testimony protected by, any applicable privilege, protection, and/or immunity, including but not limited to Suspicious Activity Reports ("SAR") and any SAR decisioning information, the existence of which BANA is prohibited from disclosing under 31 U.S.C. § 5318(g), 31 C.F.R. § 1020.320(e), 12 C.F.R. § 21.11(k), or other applicable laws, rules, or regulations. To the extent that any request purports to seek information that BANA is legally barred from producing and disclosing the existence of, BANA objects to identifying any such information. Nothing herein shall be deemed an acknowledgement that such information exists.

5. Each and every response to Plaintiff's Discovery Requests is intended to include the general objections stated above. No response is intended to be a waiver of these objections. Additional specific objections made in response to a particular Discovery Request are not intended to, and do not, waive these general objections.

6. Each and every person identified as a current employee of BANA may be contacted through Defendant's counsel only. Likewise, all former managers of BANA and/or other former employees of BANA who have legal authority to bind BANA may be contacted through Defendant's counsel only.

2

7.   BANA reserves the right to object at trial to the admissibility of any of the information or documents produced in response to the Discovery Requests.

8.   BANA reserves the right to supplement and/or amend its responses to Plaintiff's Discovery Requests up to and including the time of the trial of this matter.

## RESPONSES TO INTERROGATORIES

1.      Identify each and every person providing substantive assistance or answers to these interrogatories.  Please specify which interrogatories each person assisted with. As part of your response, identify the name, address and telephone number of the person or persons in the answering of these interrogatories.

**ANSWER:**          Subject to and without waiving the general objections, a corporate representative of BANA will sign a verification in accordance with Rule 33 of the Federal Rules of Civil Procedure.

2.      Identify all persons who are believed to or known by you, your agents, or your attorneys to have any knowledge concerning any of these issues in this lawsuit, and specify the subject matter about which the witness has knowledge.

**ANSWER:**          Subject to and without waiving the general objections, see BANA's Rule 26(a)(1) Initial Disclosures filed on May 7, 2014.

3.      Describe in detail when the Defendant was first made aware of the Plaintiff's allegations of a violation of the BHCA Anti-Tying law as described in his complaint. As part of your response describe and identify each person or entity you know or believe to possess or maintain control in the past or at the present time over any document which contains any information, communications, and documents that support the timeline as to when the Defendant was made aware.

3

**ANSWER:**     Subject to and without waiving the general objections, on April 15, 2010, Bray emailed Stephen J. Bode, Kevin Knopf, Brian Ludwick, and Sean Farrell stating that it was his "understanding that demanding the assets be held at M.L. or BofA to complete a loan would be considered tying . . . ." <u>See</u> documents that will be produced in response to the subpoena BANA issued to Merrill Lynch.

4.     Other than your attorney, identify each person with whom you have had communication of any type regarding the subject matter of the litigation. For each person, identify the type or medium of communication, date(s), who initiated contact, and the subject matter of the communication.

**ANSWER:**     BANA objects to this request because it is vague, overbroad, ambiguous, and lacks sufficient particularity for BANA to give an adequate response. BANA further objects to this request to the extent it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing and general objections, <u>see</u> Response to Interrogatory No. 2 for those people who have knowledge concerning the relevant issues in this lawsuit.

5.     Identify each and every current or former employee of Defendant who has testified under oath with respect to Plaintiff's allegations in any forum outside of this complaint. For each current or former employee of Defendant, identify whether he or she were a witness for Plaintiff, Defendant and/or both parties, the type of action, the jurisdiction, date of action, case number, and outcome of that action.

**ANSWER:**     Subject to and without waiving the general objections, the following individuals testified in the action captioned, <u>Merrill Lynch, Pierce, Fenner & Smith, Incorporated v. Patrick Ryan Bray</u>, FINRA Case No. 12-00084:

- Kevin Knopf;
- Stephen Bode; and
- Brian Dean Ludwick.

6.     Identify Defendant's policies and procedures as it relates to investigating an allegation of a violation of a Federal Law. As part of your response identify any and all

4

documentation that supports the Defendant's own internal investigation into the

Plaintiff's claims of this action.

**ANSWER:**      BANA objects to this request, including the phrase "violation of a Federal
Law," because it is vague, overbroad, ambiguous, and lacks sufficient
particularity. By way of explanation, BANA is subject to thousands of
Federal regulations and laws. It would be impossible and unduly
burdensome for BANA to provide a response to how it investigates
alleged violations of the Federal regulations and laws it is subject to.
BANA further objects to this request because it seeks information that is
irrelevant and not reasonably calculated to lead to the discovery of
admissible evidence. Subject to and without waiving the foregoing and
general objections, BANA is producing the following policies and
procedures that relate to Bray's allegations in his Complaint related to his
Federal Anti-Tying allegation:

- 2009 Anti-tying course material;
- "An Anti-tying Primer 2010";
- "An Anti-tying Primer 2011";
- "An Anti-tying Primer 2012";
- "An Anti-tying Primer 2013"; and
- "Dealing with Customers" excerpt from "Enterprise Chapter:
  Legal."

7.    Please describe if there was at anytime a violation of Defendant's own policies

and procedures by a current or former employee(s) as it relates to the collateralization of

the loan that is described in Plaintiff's original complaint from the time period 2008 to

the present. As part of your response, identify the date of each violation(s), including but

not limited to the outcome of each violation.

**ANSWER:**      There were no violations of BANA's policies with respect to the line of
credit offered to Maritz from the time period 2008 to the present.

8.    Identify all training material(s), memorandum(s), email(s), and communication(s)

of Defendant as it relates specifically to its own Anti-Tying policies and procedures from

the time period 2006 to the present. As part of your response, please identify the

5

name(s), title(s), date(s), position(s), and contact information of each author and whether

the author(s) were employees of Defendant.

**ANSWER:**         BANA objects to the time period of 2006 to the present. The relevant
time period is January 2009 through March 2012. Subject to and without
waiving the foregoing and general objections, see Response to
Interrogatory No. 6 identifying BANA's training materials related to Anti-
Tying. Additionally, further responsive emails and communications will
be produced in response to the subpoena BANA issued to Merrill Lynch.
BANA's investigation is ongoing, and BANA will supplement its
response to this interrogatory as appropriate.

9.     Please identify and describe in detail the type of loan that the Defendant prepared

for Maritz that is specific to the loan identified in Plaintiff's complaint. As part of your

response, identify the type of loan prepared for Maritz, i.e. construction loan, an

equipment loan, a fully underwritten syndicated commercial loan, a securities based loan,

a margin account, etc.

**ANSWER:**         Maritz and the banking syndicate, which included BANA as the
Administrative Agent, entered into an amended credit agreement – the
Third Amendment to Second Amended and Restated Credit Agreement
dated October 30, 2009, whereby Maritz's overall line of credit was
reduced from $125,000,000 to $85,000,000, and the price of utilizing this
credit line was increased. The terms and conditions of the loan prepared
for Maritz identified in Plaintiff's complaint are described in detail in the
following documents:

- Second Amended and Restated Credit Agreement; and
- Third Amendment to the Second Amended and Restated Credit
  Agreement.

10.     Please identify and describe any and all loans from 2007 to present that were

prepared where the Defendant acted as the Administrative Agent, the lead lender of a

loan or the only lender of a loan, and required securities such as stocks, bonds, and non-

money market mutual funds to not only be collateralized and pledged but mandated these

securities be held at an affiliate as a requirement of the loan.

ANSWER:          BANA objects to this request because it is vague, overbroad, ambiguous, and lacks sufficient particularity for BANA to give an adequate response. BANA further objects to this request to the extent it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

11.     Describe in detail if Defendant through its policies and procedures consider Bond Mutual Funds as a traditional banking and/or consider it a product that is an acceptable asset to be required to be placed at an affiliate for security of a loan and not violate the Anti-tying provisions of the BHCA law. As part of your response, identify all documentation to support your answer.

ANSWER:          BANA objects to this request because it calls for a legal conclusion. BANA further objects to this request because it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Rather, BANA asserts, among other things, that the Bond Mutual Funds were an acceptable asset for BANA, in its role as administrative agent, to require Maritz to hold as collateral at its broker-dealer affiliate, Merrill Lynch. See policies referred to in response to Interrogatory No. 6.

12.     Please identify and describe whether or not Defendant accepts collateral assignment of securities held at other financial institutions outside of their affiliates or Bank of America's umbrella to protect Defendant's loan and if so, identify from 2007 to the present. As part of your response, identify each and every collateral assignment of securities held at other financial institutions outside of their affiliates or Bank of America's umbrella.

ANSWER:          BANA objects to this request because it is overbroad and unduly burdensome. BANA further objects to this request because it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. By way of explanation, this request, as written, would require BANA to go through and analyze thousands of loans issued during this time period.

7

13.     Please describe in detail any extra protection afforded to the Defendant to protect its loan by having assets pledged by its affiliate versus a competitor of its affiliate. As part of your response, identify Defendant's policies and procedures as it relates to the ability of the Defendant to have any extra benefits of security by having assets held by Merrill Lynch versus Wells Fargo or any other broker/dealer for that matter.

**ANSWER:**      As Plaintiff is aware, several witnesses provided extensive testimony on this topic, subject to cross examination, in the action captioned, Merrill Lynch, Pierce, Fenner & Smith, Incorporated v. Patrick Ryan Bray, FINRA Case No. 12-00084. BANA refers to the transcripts that Plaintiff and his former attorneys from this action possess. Additionally, the transcripts from this action will be produced in response to the subpoena BANA issued to Merrill Lynch.

14.     Identify and describe each loan in the past 10 years the Defendant had securities collateralized from another broker/dealer that were re-pledged without consent of the Defendant to a competitor banks loan putting the Defendant's loan in a position of its collateral being minimized (in other words having the same money collateralized multiple times without the Defendant's authorization). As part of your response, identify how many times this has occurred from Defendant's own affiliates in the past 10 years.

**ANSWER:**      BANA objects to this request because it is overbroad and unduly burdensome. BANA further objects to this request because it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. By way of explanation, this request, as written, would require BANA to go through and analyze thousands of loans issued during this time period. Additionally, this request is incapable of a response because if the securities were "re-pledged without consent of [BANA]," BANA may not be aware that it happened and thus cannot provide an accurate response to this request.

8

15.     Please identify whether it is mandatory for Defendant's employees who prepare loans such as Stephen Bode and Kevin Knopf to be securities licensed and be dually employed by its affiliate and if so why?

**ANSWER:**          No.

16.     Describe in detail the total compensation plan of Defendant's employee(s), including but not limited to Stephen Bode and Kevin Knopf as it relates to referrals to an affiliate. As part of your response, identify the overall bonus structure for Defendant employee(s), such as Stephen Bode and Kevin Knopf and state if referrals generate or could generate any extra revenue in any way for the employee that made the referral.

**ANSWER:**          As Plaintiff is aware, Stephen Bode and Kevin Knopf provided extensive testimony on this topic, subject to cross examination, in the action captioned, Merrill Lynch, Pierce, Fenner & Smith, Incorporated v. Patrick Ryan Bray, FINRA Case No. 12-00084. BANA refers to the transcripts that Plaintiff and his attorneys from this action possess. Additionally, the transcripts from this action will be produced in response to the subpoena BANA issued to Merrill Lynch.

17.     Please identify and describe in detail Defendant's policies and procedures as it relates from the origination of a loan through the finalization of the loan such as the one identified in Plaintiff's complaint. As part of your response, describe whether all policies in this particular loan were followed and nothing went against the Defendant's own policies such as but not limited to whether Internal Counsel was ever asked to get involved.

**ANSWER:**          BANA objects to this request because it is overbroad and unduly burdensome. BANA further objects to this request because it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. By way of explanation, BANA originates thousands of loans throughout its business as well as many different types of loans. Therefore, Bray's request to identify BANA's policies and procedures as it relates to the origination of a loan through the

9

finalization of a loan is incapable of a response. Subject to and without waiving the foregoing and general objections, BANA is producing the following policies and procedures identified in response to Interrogatory No. 6 that relate only to the origination of the loan through the finalization of the loan identified in Bray's Complaint.

18.     Please identify and describe in detail when the Defendant first became aware that the assets that were pledged that are in question in the Plaintiff's complaint should have never been pledged in the first place as most of the monies that were pledged were not an asset of the company but acted more as a float for monies that were already spoken for and purchased by the general public on transactional gift cards. As part of your response, describe Defendant's due diligence that was taken to identify the source of the said assets held in bond mutual funds.

ANSWER:        BANA objects to this request because it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing and general objections, as Plaintiff is aware, several witnesses provided extensive testimony on this topic, subject to cross examination, in the action captioned, Merrill Lynch, Pierce, Fenner & Smith, Incorporated v. Patrick Ryan Bray, FINRA Case No. 12-00084. BANA refers to the transcripts that Plaintiff and his attorneys from this action possess. Additionally, the transcripts from this action will be produced in response to the subpoena BANA issued to Merrill Lynch.

19.     Please identify and describe in detail as to whether it was the Defendant or Maritz that originally offered or made a requirement that the bond mutual funds collateralized in the loan in question of the Plaintiff's complaint be held at Defendant's affiliate.

ANSWER:        As Plaintiff is aware, several witnesses provided extensive testimony, subject to cross examination, in the action captioned, Merrill Lynch, Pierce, Fenner & Smith, Incorporated v. Patrick Ryan Bray, FINRA Case No. 12-00084, on the requirement to hold bond mutual funds as collateral at BANA's broker-dealer affiliate, Merrill Lynch, and the negotiations that took place regarding the collateralization of these assets.

10

20.     Please identify and describe the security file concerning the investigation of Plaintiff's alleged threat(s) against employee(s) of Defendant.  As part of your response describe the conclusion or outcome of the investigation.

**ANSWER:**          Subject to and without waiving the general objections, BANA refers Plaintiff to the security file contained in the documents responsive to the subpoena BANA issued to Merrill Lynch.


21.     Please identify and describe if Defendant finds it acceptable through its policies and procedures for one or more of its employee(s) to make false and unsubstantiated allegations including but not limited to alleged death threat(s) to a mutual client or to anyone for that matter to elicit a response to damage the credibility and relationship of a competitor of the Defendant.

**ANSWER:**          As a preliminary matter, this Interrogatory misstates the facts.  Subject to and without waiving the foregoing and general objections, BANA will produce:

- 2010 Bank of American Corporation Code of Ethics.

22.    Please identify and describe in detail if it was ever discovered that Maritz over the past ten (10) years ever falsified, made misleading statements of facts or did any wrong doings as it relates to information given to Defendant in order for them getting the loans approved by the Defendant which would have otherwise if known different by Defendant have changed the outcome of the terms of the loan or in any way have made the Defendant decline the loan if the information presented was different.

**ANSWER:**    BANA objects to this request because it is impossible for BANA to respond whether in the last ten years Maritz ever falsified, made misleading statements of fact, or did any wrong doings related to information given to BANA for Maritz to get any loan approved by BANA. To the best of our knowledge, as those terms are understood, Maritz never falsified, made misleading statements of fact, or did any wrongdoing as it relates to the Second Amended Credit Agreement. Furthermore, it would be pure speculation for BANA to identify whether the terms of the Maritz loan would have changed or whether it would have declined the Maritz loan if the information presented was different. By way of further response, in 2009, Maritz had defaulted on certain financial covenants in its credit agreement with BANA. See transcripts from the *Bray v. Merrill Lynch* action that will be produced in response to the subpoena BANA issued to Merrill Lynch.

23.    Please identify and describe in detail if prior to or since the allegations of a violation by the Plaintiff by Defendant of the BHCA Anti-Tying Law whether the Defendant ever requested an opinion letter from the FED Board of Governors to see if the allegations in the Plaintiff's complaint is deemed an appropriate product and practice or explain where in Defendant's policies and procedures it is locatable that it is and approved product and practice by the FED.

**ANSWER:**    Subject to and without waiving the general objections, BANA has never written to the Federal Reserve Board concerning the allegations in Plaintiff's Complaint.

24.     Please identify and describe in detail if the Control portion of the collateral assignment, of the assets pledged by Defendant's affiliate, were ever exercised and if Defendant ever had control of the assets in question in Plaintiff's complaint.

**ANSWER:**          BANA objects to this request because it is vague, ambiguous, and it is unclear what the Plaintiff is asking. Subject to and without waiving the foregoing and general objections, upon information and belief, BANA never exercised its rights contained in the Notice of Exclusive Control provision of the Control Agreement in effect in March 2010.

Date:  July 2, 2014                              Respectfully submitted,

                                                 Janelle E. Fulton
                                                 Florida Bar ID #97920
                                                 Rubin, Fortunato & Harbison P.C.
                                                 10 South Leopard Road
                                                 Paoli, PA 19301
                                                 Ph. (610) 408-2000
                                                 Fax. (610) 408-9000
                                                 jfulton@rubinfortunato.com

                                                 Mahlon H. Barlow
                                                 Florida Bar ID # 871117
                                                 Sivyer Barlow & Watson, P.A.
                                                 SunTrust Financial Centre
                                                 401 E. Jackson Street, Suite 2225
                                                 Tampa, FL 33602
                                                 Ph. (813) 221-4242
                                                 Fax. (813) 227-8598
                                                 MBarlow@sbwlegal.com

                                                 *Attorneys for Bank of America, N.A.*

13

## VERIFICATION

I, Brenda Brewer, declare and state:

I am a Vice President of Bank of America, N.A., the Defendant in this action. I am duly authorized by the Bank to verify the foregoing DEFENDANT BANK OF AMERICA, N.A.'S, *Responses to Plaintiff Patrick Ryan Bray's First Set of Interrogatories Directed to Defendant Bank of America,* on its behalf and hereby do so. The facts and matters stated therein are not within my personal knowledge or of any one individual at the Bank; rather, the facts stated therein have been assembled, on behalf of the Bank and with the assistance of counsel, by authorized employees of the Bank with personal knowledge of the subject matter of the response and/or information and belief as to the truth and/or accuracy thereof.

Subject to the terms of this verification, Bank of America, N.A., declares, under penalty of perjury, that the foregoing responses are true and correct to the best of its knowledge and belief.

Executed at Westlake Village, California, this 30th day of June, 2014.

Bank of America, N.A.
By Brenda J. Brewer, Vice President

## CERTIFICATE OF SERVICE

I hereby certify that, on July 2, 2014, a copy of the foregoing *Responses to Plaintiff*

*Patrick Ryan Bray's First Set of Interrogatories Directed to Defendant Bank of America (BANA)*

was served via email and overnight delivery by United Parcel Service as follows:

        Patrick Ryan Bray
        4007 Riverview Blvd.
        Bradenton, Florida 34209
        pryanbray@msn.com

        *Plaintiff*

                        Janelle E. Fulton