UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PATRICK RYAN BRAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:14-CV-01336-CEJ |
| | ) |
| BANK OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's motion to dismiss plaintiff's complaint for lack of standing as to Count I (tying of assets in violation of 12 U.S.C. § 1972(1)) and failure to state a claim as to Counts II (libel) and III (slander). The issues are fully briefed. Also before the Court are the plaintiff's motion to amend the complaint by including exhibits in support of his claims[1] and motion to amend the complaint "to address appropriate parties."[2]

**I. Background**

Plaintiff Patrick Bray was an independent financial advisor in St. Petersburg, Florida. Beginning in 2004, one of Bray's clients was InteliSpend Prepaid Solutions, for whom he managed a portfolio of initially $45 million and eventually up to $70

---

[1] Bray contends that the exhibits he wants to add to the complaint demonstrate that BoA violated 12 U.S.C. § 1972 [Doc. #44]. The Court finds it unnecessary to consider the exhibits because they are irrelevant to the threshold question of standing.

[2] In this motion, plaintiff seeks to amend his complaint to "allow him to formally identify all parties that he has filed a complaint against . . . ." [Doc. #17]. He mentions three subsidiaries of Bank of America Corporation without identifying which corporate entities he seeks to add to the case. The Court reads the motion as Bray's attempt to add Bank of America Corporation and the three subsidiaries to this action. However, Bray does not seek to include in the complaint any facts that would support a claim against any of these entities. Therefore, the motion to amend by adding parties will be denied.

million. The InteliSpend account represented a significant portion of Bray's book of business.

In March 2010, InteliSpend decided to partner with Bank of America, N.A. (BoA) to manage its assets. InteliSpend arranged for Bray to continue managing its assets by securing him a position with BoA. From March 2010 until October 2011, Bray worked for BoA and its corporate cousin, Merrill Lynch, as a financial advisor. BoA was the lead lender for InteliSpend's parent company, Maritz, LLC, and acted as Maritz's administrative agent for a six-bank lending syndicate line of credit. When he began his employment with Merrill Lynch, the company provided Bray with a loan secured by a promissory note in the amount of $395,805.

Bray's relationship with BoA and Merrill Lynch deteriorated over time, culminating in his decision to resign in October 2011. After Bray left BoA he hoped that Maritz would move its assets from Merrill Lynch and allow him to continue to manage those funds. However, Maritz chose to keep its assets with BoA and Merrill Lynch instead. In Count I of the complaint, Bray alleges that Maritz chose not to move its assets because BoA threatened to put its loans in default if Maritz withdrew those funds. Bray was never employed by Maritz, nor was he ever an owner, shareholder, or otherwise connected to Maritz, except through his management of some of Maritz's assets via his relationship with InteliSpend. In addition, Bray was never a direct competitor with BoA, nor was he ever a customer of BoA.

In Count II of the complaint, Bray alleges that a BoA employee sent an e-mail to one of BoA's affiliates, Blackrock, that falsely suggested that Bray was engaging in unethical behavior. After that, Bray ran into many obstacles whenever

he attempted to work with Blackrock on behalf of Maritz. Bray also alleges that "there were numerous other cases of written defamation" by BoA's employees, but he provides no details about those incidents. In Count III, Bray alleges that BoA slandered him when it told Maritz that Bray had threatened BoA's employees. According to the complaint, this statement was made after BoA's security investigation revealed that Bray had not threatened anyone.

On January 6, 2012, after Bray failed to pay back $335,491.88 of the remaining balance on his loan, Merrill Lynch initiated an arbitration proceeding before the Financial Industry Regulatory Authority (FINRA). BoA was not a party to the arbitration. Bray raised several counterclaims in the arbitration, including that Merrill Lynch violated the Bank Holding Company Act's prohibition on "tying of assets." 12 U.S.C. § 1972(1). A hearing was held on Merrill Lynch's claim and Bray's counterclaims from November 4 to 13, 2013. Thereafter, the FINRA panel issued a directed verdict against Bray on Merrill Lynch's claim and on each of Bray's counterclaims. Bray alleges that during the arbitration BoA made a written accusation against him to the panel of FINRA arbitrators, accusing Bray of threatening the lives of BoA's employees, which Bray says was also libelous.[3]

On February 2, 2014, Bray initiated this action against BoA in the United States District Court for the Middle District of Florida. The case was transferred to this Court on July 29, 2014. BoA moves to dismiss the complaint, arguing that Bray lacks standing to bring a claim under 12 U.S.C. § 1972(1) and that the complaint fails to state a claim for libel or slander under Fed. R. Civ. P. 12(b)(6).

---

[3]Bray says that BoA wrote the allegedly libelous statement, but BoA says that Merrill Lynch (through its attorneys), not BoA, wrote the statement. In his response to BoA's motion to dismiss, Bray agrees that BoA was not a party to the FINRA arbitration, which suggests that Merrill Lynch, not BoA, wrote the statement. However, the Court will assume for purposes of deciding the motion to dismiss that Bray is correct that BoA wrote the statement.

## II. Legal Standard

### A. Motion to dismiss for lack of subject-matter jurisdiction

Dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure is appropriate if the plaintiff has failed to satisfy a threshold jurisdictional requirement. *See Trimble v. Asarco, Inc.*, 232 F.3d 946, 955 n.9 (8th Cir. 2000). Standing is a threshold jurisdictional issue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A dismissal for lack of subject matter jurisdiction requires that the complaint be successfully challenged on its face or on the factual truthfulness of its averments. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a facial attack, the court restricts itself to the face of the pleadings, and all of the factual allegations concerning jurisdiction are presumed to be true. *Id.* However, in a factual challenge, the court considers matters outside of the pleadings, and no presumptive truthfulness attaches to the plaintiff's allegations. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Furthermore, the existence of disputed material facts does not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.* at 729. "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case— there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* The burden of proving that jurisdiction exists rests with the plaintiff. *Great Rivers Habitat Alliance v. Fed. Emergency Mgmt. Agency*, 615 F.3d 985, 988 (8th Cir. 2010).

### B. Motion to dismiss for failure to state a claim.

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual

allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (*citing Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. *Id.* A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.*, 550 U.S. at 570; *see also id.* at 563 ("no set of facts" language in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), "has earned its retirement.") "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.

### III. Discussion

#### *A. Bank Holding Company Act claim*

The Bank Holding Company Act, 12 U.S.C. §§ 1971–78, prohibits banks from engaging in certain practices that "require bank customers to accept or provide some service or product or refrain from dealing with other parties in order to obtain the bank product or service they desire." *Swerdloff v. Miami Nat'l Bank*, 584 F.2d 54, 58 (5th Cir. 1978). A private plaintiff, as opposed to a government regulator, can bring a suit to recover treble damages for the so-called anti-tying violations, provided he qualifies as a "person who is injured in his business or property by reason of anything forbidden in [§] 1972 . . . ." 12 U.S.C. § 1975.

Bray brought his suit under § 1972(1), which prohibits a bank from engaging in certain anti-competitive tying practices—*i.e.*, conditioning a customer's access to some of the bank's desirable products on the acceptance of certain other, unwanted products. 12 U.S.C. § 1972(1).[4] To maintain a cause of action for a violation of § 1972(1), a plaintiff must set forth facts plausibly demonstrating the following four elements: "(1) that the bank imposed a tie, (2) that the practice was unusual in the banking industry, (3) that it resulted in an anticompetitive arrangement, and (4) that it benefitted the bank." *Mamot Feed Lot & Trucking v. Hobson*, 539 F.3d 898, 903–04 (8th Cir. 2008) (quoting *Doe v. Northwest Bank Minnesota, N.A.*, 107 F.3d 1297, 1304 (8th Cir. 1997), *overruled on other grounds by Humana Inc. v. Forsyth*, 525 U.S. 299 (1999)) (numbering added). At issue here is whether Bray—a non-customer, non-competitor, former employee—has standing to sue BoA under § 1972.

### 1. **<u>Defining constitutional and statutory standing</u>**

"[T]he question of standing is whether the litigant is entitled to have the [federal] court decide the merits of the dispute or of particular issues." *Warth v.*

---

[4] The statute provides:
   (1) A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement—
      (A) that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service;
      (B) that the customer shall obtain some additional credit, property, or service from a bank holding company of such bank, or from any other subsidiary of such bank holding company;
      (C) that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service;
      (D) that the customer provide some additional credit, property, or service to a bank holding company of such bank, or to any other subsidiary of such bank holding company; or
      (E) that the customer shall not obtain some other credit, property, or service from a competitor of such bank, a bank holding company of such bank, or any subsidiary of such bank holding company, other than a condition or requirement that such bank shall reasonably impose in a credit transaction to assure the soundness of the credit . . . .

6

*Seldin*, 422 U.S. 490, 498 (1975). "When a plaintiff alleges injury to rights conferred by statute, two separate standing-related inquiries are implicated: whether the plaintiff has Article III standing (constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing)." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 934 (8th Cir. 2012).

First, constitutional standing addresses the fact that federal courts have limited jurisdiction because "Article III, § 2, of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). To satisfy the "case or controversy" requirement of Article III, a plaintiff must show that he has suffered an injury in fact, fairly traceable to the action of defendants, which is likely to be redressed by a favorable decision. *See Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citing *Lujan*, 504 U.S. at 560–61). An injury in fact must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Causation is "a key element of Article III standing." *Miller*, 688 F.3d at 935. "When the injury alleged is the result of actions by some third party, not the defendant, the plaintiff cannot satisfy the causation element of the standing inquiry." *Id.* To satisfy Article III, a plaintiff must "plausibly allege a direct causal relationship between" his "alleged injuries" and the defendant's actions. *Id.*

Second, "[s]tatutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded *this* injured plaintiff the right to sue the defendant to redress his injury." *Id.* at 934 (quoting *Graden v. Conexant Sys., Inc.*, 496 F.3d 291, 295 (3d Cir. 2007)). "[T]o establish standing, a plaintiff seeking judicial review must [] show the injury complained of falls within the zone of

interests sought to be protected by the statutory provision." *Rosebud Sioux Tribe v. McDivitt*, 286 F.3d 1031, 1036 (8th Cir. 2002) (citing *Bennett*, 520 U.S. at 162–63).

### 2. Lack of Article III constitutional standing

Bray's claim under § 1972 does not satisfy Article III's causation requirement. *See Miller*, 688 F.3d at 935. Bray's complaint alleges that BoA violated § 1972(1) through tying of assets. However, Bray acknowledges that he left his job at BoA in October 2011 voluntarily. He also acknowledges that, thereafter, he lost his account with InteliSpend because InteliSpend (through Maritz) decided to keep its assets with Merrill Lynch instead of following Bray when he voluntarily left BoA. Maritz's decision to stop working with Bray might have injured him. But Bray sued BoA, not Maritz, and BoA neither made Bray leave his job nor made Maritz stop working with Bray.

Bray does not set forth any facts to plausibly suggest that Maritz would have continued to work with him and would have left Merrill Lynch or BoA, if not for the alleged tying scheme. If BoA had an asset tying scheme that violated § 1972, Maritz would have been the one injured by that scheme, not Bray. Bray has not met Article III's causation requirement because all of his alleged injuries are traceable to a third party, Maritz (his former client), not BoA. *See id.* Bray has failed to "plausibly allege a direct causal relationship between" his alleged injuries and BoA's purported asset tying scheme. *Id.* Thus, Bray lacks Article III standing to sue BoA.

### 3. Lack of statutory standing under 12 U.S.C. § 1972

"[A]ntitrust standing requirements go beyond injury in fact. The court must also determine whether the plaintiff, even if injured, is the proper party to bring the

action." *Eureka Urethane, Inc. v. PBA, Inc.*, 746 F. Supp. 915, 929 (E.D. Mo. 1990) *aff'd sub nom. Eureka Urethane, Inc. v. P.B.A., Inc.*, 935 F.2d 990 (8th Cir. 1991). The Eighth Circuit has not had occasion to say whether a plaintiff who is not a customer, a putative customer, a shareholder of a customer, or a competitor of a bank has standing to sue that bank for alleged violations of § 1972. *See Rosebud*, 286 F.3d at 1036 (discussing statutory zone of interest standing). However, in every case where the Eighth Circuit has addressed the merits of a plaintiff's claim that a bank violated § 1972 through an anti-competitive tying scheme, that plaintiff was a customer of the bank in question. *See, e.g.*, *Hobson*, 539 F.3d at 904 (affirming a district court's holding that a *customer* had not been the victim of an anti-competitive tying scheme under § 1972); *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402 (8th Cir. 1999); *Doe*, 107 F.3d 1297; *Duryea v. Third Nw. Nat. Bank of Minneapolis*, 606 F.2d 823 (8th Cir. 1979); *see also Gold Bank v. Post Hill Greens, L.L.C.*, 04-0565-CV-W-FJG, 2006 WL 2883262 (W.D. Mo. Oct. 6, 2006) (granting summary judgment that a *customer* had not been the victim of an anti-competitive tying scheme under § 1972); *Alpine Elec. Co. v. Union Bank*, 776 F. Supp. 486 (W.D. Mo. 1991) *aff'd*, 979 F.2d 133 (8th Cir. 1992).

The Fifth Circuit has emphasized that a customer relationship with the bank accused of tying is often crucial to establishing standing under § 1972. *Swerdloff*, 584 F.2d at 59. In *Swerdloff*, the Fifth Circuit held that the sole stockholders of a closely held corporation were customers within the meaning of § 1972, and thus had standing to sue a bank under the statute, even though they did not have personal accounts with the bank because they "entered into a contract of guarantee on which they were liable" for their corporation's loans. *Id.* at 58–59. The

9

stockholders had standing to sue following on bank's illegal tying scheme because "the stockholders, not the corporation, were required to provide the prohibited 'additional' service if the loan to the corporation was to be continued." *Id.* at 57. In other words, because the stockholders were forced into the tying scheme, they qualified as customers under the statute.

The Fifth Circuit stressed that the "economic realities of ownership and control must be considered in determining who is a 'customer' within the meaning of [§ 1972]." *Id.* at 58. Examining the plaintiffs' relationship with the bank, the Fifth Circuit held that "the owners of 100% [o]f the stock of a corporation who have been required individually to guarantee the corporation's loan must be considered just as much 'customers' of the bank as the corporation through which they do business for the purposes of [§ 1972]." *Id.* at 59. Yet, the Fifth Circuit did not extend the definition of a "customer" under § 1972 to include a person who has no ownership or control over the alleged victim of a bank's tying scheme.

The Fifth Circuit has not held, however, that a non-customer can never have standing to sue under § 1972; rather, standing under § 1972 is limited to those persons whose "injuries [are] a direct consequence of the defendant['s] activities." *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir. 1986). In *Campbell*, the Fifth Circuit said: "It may very well be that, under general principles of standing, most non-customer injuries will be too remote to furnish a basis for recovery under the act." *Id.* at 442. To determine whether a non-customer has standing under § 1972, a court must evaluate "the plaintiffs' harm, the alleged wrongdoing by the defendants, and the relationship between them." *Id.* at 442–43 (quoting *Associated Gen. Contractors of California, Inc. v. California State Council*

*of Carpenters*, 459 U.S. 519, 535 (1983)). Claims by non-customer plaintiffs based on antitrust statutes like § 1972 are particularly disfavored because a non-customer plaintiff must demonstrate "that recovery by him will not duplicate potential recovery by other plaintiffs . . . ." *Id.* (citing *Walker v. U-Haul of Mississippi*, 747 F.2d 1011, 1014 (5th Cir. 1984)).

Like *Swerdloff* and *Campbell*, many federal court cases stand for the commonsense proposition that a person cannot sue to recover from a bank's tying scheme if that person is not a customer, a putative customer, in privity with a customer (i.e., a shareholder of a customer), or a competitor of the defendant bank. *See, e.g.*, *Integon Life Ins. Corp. v. Browning*, 989 F.2d 1143, 1151 (11th Cir. 1993) (comparing violations under § 1972 to anti-tying violations under the Home Owners' Loan Act and holding that a "plaintiff must prove that the [defendant] forced or coerced *the plaintiff* into purchasing the tied product" (emphasis added)); *Gulf States Land & Dev., Inc. v. Premier Bank N.A.*, 956 F.2d 502, 506 (5th Cir. 1992) (holding that the only plaintiffs who had standing to bring a § 1972 claim were those plaintiffs on whose agreement to certain allegedly tied transactions the bank had conditioned approval of a loan); *Amerifirst Properties, Inc. v. F.D.I.C.*, 880 F.2d 821, 825 (5th Cir. 1989) (holding that if a plaintiff "is a customer" of the defendant bank, the plaintiff has standing per se to bring a claim under § 1972, and that a customer is someone who was in "both a direct relationship and privity of contract with the bank"); *Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*, 877 F.2d 1333, 1335–36 (7th Cir. 1989) (holding that where recovery by a victim-firm would make the shareholders of the firm whole, the shareholders lacked independent standing to sue under § 1972 because it would

result in "double counting" of recovery); *Davis v. First Nat. Bank of Westville*, 868 F.2d 206, 209 (7th Cir. 1989) (noting that a permissible claim under § 1972 arises where a plaintiff alleges that the defendant bank attempted to prevent *the plaintiff* from dealing with other banks); *Parsons Steel, Inc. v. First Alabama Bank of Montgomery, N.A.*, 679 F.2d 242, 246 (11th Cir. 1982) (holding that a corporation could sue on behalf of a subsidiary); *Costner v. Blount Nat. Bank of Maryville, Tennessee*, 578 F.2d 1192, 1195 (6th Cir. 1978) (affirming a jury's verdict that a § 1972 violation occurred, and holding that a plaintiff stockholder had standing because the jury found for the stockholder after taking into account a proper instruction that "the injury to the stockholder must be direct and not merely consequential or derivative through the corporation"); *Stefiuk v. First Union Nat. Bank of Florida*, 61 F. Supp. 2d 1294, 1299 (S.D. Fla. 1999) *aff'd sub nom. Stefiuk v. First Union Nat'l Bank of Fla.*, 207 F.3d 664 (11th Cir. 2000) ("Absent the prospect of becoming an actual bank customer, [a plaintiff] lacks both a direct relationship and privity of contract with the bank, the two requisites for standing."); *Rayman v. Am. Charter Fed. Sav. & Loan Ass'n*, 866 F. Supp. 1252, 1262 (D. Neb. 1994) *rev'd on other grounds*, 75 F.3d 349 (8th Cir. 1996) (explaining that "so long as the plaintiff is a 'customer' of the bank, there is no reason to limit the anti-tying statute to illegal 'ties' that are implemented rather than attempted, assuming such attempted 'ties' proximately cause *the customer* damage" (emphasis added)); *Jewell v. Cmty. Bank of Lafourche*, No. CIV. A. 89-4615, 1990 WL 130623, at *2 (E.D. La. Aug. 31, 1990) (holding that a plaintiff had no standing to bring a § 1972 claim where "recovery by him would duplicate potential recovery by" the victim of the tying); *Hargus v. First Nat. Bank in Port Lavaca*, 666 F. Supp. 111, 112 (S.D.

Tex. 1987) *aff'd sub nom. Hargus v. First Nat'l Bank*, 835 F.2d 286 (5th Cir. 1987) (holding that an employee of a bank who was not a customer had no standing to sue under § 1972); *Omega Homes, Inc. v. Citicorp. Acceptance Co.*, 656 F. Supp. 393, 400, 403 (W.D. Va. 1987) (acknowledging that standing to bring a § 1972 claim is limited when a "plaintiff is neither a clearcut consumer nor a direct competitor in the relevant market," particularly where there are "more appropriate plaintiffs" to bring a claim); *see also Capital Temporaries, Inc. v. Olsten Corporation*, 506 F.2d 658, 662 (2d Cir. 1974) ("[N]o tying arrangement can possibly exist unless the person aggrieved can establish that *he* has been required to purchase something which *he* does not want to take." (emphasis added)). The Court finds the reasoning of those courts persuasive.

Moreover, the case Bray relies on does not support his claim of standing under § 1972. *See Halifax Ctr., LLC v. PBI Bank, Inc.*, 1:13-CV-00071-JHM, 2014 WL 626753 (W.D. Ky. Feb. 18, 2014) (discussing whether a *customer* was injured by a bank's alleged tying scheme). Bray cites to no case in which a court has ruled that a person in such a position has standing to sue a bank for violations of § 1972, and the Court has found none. The Court is persuaded that a plaintiff who is not a customer, a putative customer, a shareholder of a customer, or a competitor of a defendant bank lacks standing and cannot maintain a cause of action for alleged violations of § 1972.

Here, Bray was not a customer of BoA, nor was he in the process of applying for an allegedly tied product to become a customer. He was not a shareholder of either Maritz or InteliSpend, the real victims of the alleged tying scheme. While

13

Bray was employed by Merrill Lynch he was, obviously, not competing with BoA, Merrill Lynch's corporate cousin.

Likewise, Bray does not allege in the complaint that he competed with BoA after he left Merrill Lynch. In Bray's response to BoA's motion to dismiss, however, Bray says that he competed with BoA, but he never explains how. At most, he suggests that he competed with Merrill Lynch, not BoA, for management over InteliSpend's and Maritz's assets. But Merrill Lynch is not a defendant here and though Merrill Lynch and BoA are related corporations, they are not the same.[5] Because Bray was not a customer, a putative customer, a shareholder of a customer, or a competitor of BoA, he has no standing to sue for BoA's alleged tying scheme under § 1972. Accordingly, Count I of the complaint will be dismissed.

### B. Defamation claims

Counts II and III are for libel and slander, respectively. Libel and slander are subspecies of defamation. *Delacruz v. Peninsula State Bank*, 221 So. 2d 772, 775 (Fla. Dist. Ct. App. 1969); *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 308 (Mo. 1993). The parties assume that Florida law should apply to Bray's defamation claims, though some of the interactions between Bray and BoA's employees occurred in Missouri. Under Florida law, "[d]efamation has the following five elements: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5)

---

[5] The reason Bray has not chosen to sue Merrill Lynch here is not entirely clear, but the binding nature of the FINRA arbitration proceeding on this very issue—finding that Merrill Lynch did not violate § 1972—may be the reason. *See Gustin v. FDIC*, 835 F. Supp. 503, 508 (W.D. Mo. 1993), *supplemented*, 843 F. Supp. 536 (W.D. Mo. 1993) ("[A]s a matter of public policy, a private cause of action under the anti-tying statute like any other cause of action for damages, may be compromised and settled.").

statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Similarly, under Missouri law, "[i]n a defamation action, a plaintiff must establish: '1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation.'" *Cockram v. Genesco, Inc.*, 680 F.3d 1046, 1050 (8th Cir. 2012) (quoting *State ex rel. BP Prod. N. Am., Inc. v. Ross*, 163 S.W.3d 922, 929 (Mo. 2005) (en banc)).

The Court does not need to decide which state's law applies, however, because disposition of the issues would be the same under both Missouri and Florida law.

### 1. **Libel claim**

Bray's libel claim is based on two writings.[6]

First, in March 2010, one of BoA's employees sent an e-mail to Blackrock falsely suggesting that Bray was engaging in unethical behavior. Bray had difficulty working with Blackrock after that, at which point his alleged injury was ascertainable. Under both Florida law and Missouri law, the statute of limitations for defamation claims is two years. Fla. Stat. § 95.11(4)(g); Mo. Rev. Stat. § 516.140. Bray did not bring this suit until February 2014, almost four years later. Bray argues that his failure to bring the claim within the limitations period should be excused because he did not discover the e-mail until 2013. But the delayed discovery rule tolling the statute of limitations is not applicable to defamation claims. *Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v.*

---

[6]Bray also alleges that there were numerous other cases of written defamation. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Bray's conclusory statement that there were other incidents of libel, unsupported by facts, does not state a plausible claim. Bray's conclusory statement that there were other, unspecified incidents of slander suffers from the same defect.

*Flanagan*, 629 So. 2d 113, 115 (Fla. 1993); *Thurston v. Ballinger*, 884 S.W.2d 22, 26 (Mo. Ct. App. 1994) (holding that a statute of limitations begins to run on a defamation claim when damage is ascertainable); *see also Chem. Workers Basic Union, Local No. 1744 v. Arnold Sav. Bank*, 411 S.W.2d 159, 164 (Mo. 1966) (discussing the differences between when damage is ascertainable and the discovery rule, and rejecting the latter).[7] So Bray's libel claim with regard to the e-mail is barred by the two-year statute of limitations of either state.

Second, during the 2013 FINRA arbitration, BoA made a written accusation that Bray threatened the lives of BoA's employees. Under either Florida law or Missouri law, allegedly defamatory statements made in the course of an arbitration proceeding are absolutely privileged and not actionable. *Kidwell v. Gen. Motors Corp.*, 975 So. 2d 503, 505 (Fla. Dist. Ct. App. 2007); *Wunsch v. Sun Life Assur. Co. of Canada*, 92 S.W.3d 146, 156 (Mo. Ct. App. 2002). Therefore, Bray's libel allegation with regard to the written accusation during the FINRA arbitration fails to state a claim.

### 2. *Slander claim*

Bray's slander claim is also time barred. Again, under both Florida law and Missouri law, the statute of limitations for defamation claims is two years. Fla. Stat. § 95.11(4)(g); Mo. Rev. Stat. § 516.140. Bray says that after he resigned in October 2011 one of BoA's employees falsely stated to Martiz's officers that Bray had threatened the lives of BoA's employees. Maritz then chose not to move its assets from BoA and stopped working with Bray, at which point Bray's alleged injury was ascertainable. Bray brought this suit in February 2014, over two years

---

[7]Bray's argument that changes in FINRA's rules regarding tolling of the statute of limitations while FINRA proceedings are ongoing has no bearing on his libel and slander claims because, *inter alia*, Bray never raised those claims in the FINRA arbitration.

later. Again, the delayed discovery rule tolling the statute of limitations is not applicable to defamation claims. *Flanagan*, 629 So. 2d at 115; *Thurston*, 884 S.W.2d at 26. Therefore, Bray's slander claim is barred by the two-year statute of limitations of either state.

\*\*\*\*

For the reasons discussed above,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to file an amended complaint to dismiss Count IV [Doc. #41] is **granted**.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file an amended complaint to add defendants [Doc. #17] is **denied**.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to amend his original complaint to include certain exhibits [Doc. #44] is **denied**.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss plaintiff's complaint [Doc. #12] is **granted**.

**IT IS FURTHER ORDERED** that plaintiff's motions for leave to file a sur-reply, for leave to file electronically, and for a Rule 16 conference [Doc. ## 26, 36 37, and 49] are **moot**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 6th day of November, 2014.