UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PATRICK RYAN BRAY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:14-CV-1336-CEJ ) |
| BANK OF AMERICA, N.A., | ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

On February 2, 2014, plaintiff Patrick Bray initiated this action against defendant Bank of America, N.A. in the United States District Court for the Middle District of Florida. In the complaint, plaintiff asserts a violation of the anti-tying provisions of the Bank Holding Company Act, 12 U.S.C. § 1972(1), (Count I) and claims of defamation (Count II), slander (Count III), and harassment (Count IV). The case was transferred to this district on July 29, 2014.

On November 6, 2014, the court granted plaintiff's motion to voluntarily dismiss Count IV. The Court also granted defendant's motion to dismiss the remaining counts in the complaint. As to Count I, the court found that plaintiff lacked both Article III and "statutory standing" to maintain a § 1972(1) claim against defendant. *Bray v. Bank of America, N.A.*, No. 4:14-CV-1336-CEJ, 2014 WL 5783039 (E.D. Mo. Nov. 6, 2014).

On appeal, the dismissal of Counts II through IV was affirmed. However, the court of appeals reversed the order dismissing Count I and remanded the case with directions that the court "consider in the first instance whether [plaintiff] has standing" to maintain a § 1972(1) claim in light of *Lexmark Int'l, Inc. v. Static*

*Control Components, Inc.*, 134 S. Ct. 1377 (2014). *Bray v. Bank of America, N.A.*, 611 Fed. App'x 888 (8th Cir. 2015). After remand, the parties were given the opportunity to file supplemental briefs addressing that question, and the matter is now ready for disposition.

**I.     Background**

According to the complaint, plaintiff, an independent financial advisor, began managing certain assets of InteliSpend Prepaid Solutions in 2004. InteliSpend was an entity that was wholly-owned by Maritz, LLC.

Defendant was the administrative agent for a six-bank syndicated line of credit that was being renewed for Maritz. As collateral for the renewed line of credit, Maritz pledged the assets of InteliSpend. The defendant then required that Maritz move the assets to Merrill Lynch where they would be held as collateral. Plaintiff alleges that the move to Merrill Lynch was the result of an "explicit and implicit tying arrangement." Because plaintiff wanted to continue managing InteliSpend's assets, he was "forced" to begin working for defendant and Merrill Lynch in March 2010.

Plaintiff alleges that "[b]y forcing [InteliSpend's] assets to [Merrill Lynch], the [d]efendant would now receive revenue from both the syndicated loan and fees for being the [a]dministrative [a]gent on the loan." The revenue stream was "the sole reason" for "forc[ing]" InteliSpend's assets "to move to" Merrill Lynch, a putative tying arrangement in violation of § 1972(1). Plaintiff continued to work for Merrill Lynch, servicing the InteliSpend account, until he resigned in October 2011. However, prior to his resignation, plaintiff became aware that the InteliSpend assets were going to be released from the collateral assignment and would no

longer be tethered to Merrill Lynch.

Plaintiff alleges that immediately after his resignation, defendant issued a threat to Maritz that its loan would be put into default if Maritz allowed plaintiff to continue to manage the InteliSpend assets. However, there is no allegation that Maritz wanted to transfer the management of the InteliSpend assets to plaintiff after he resigned. Also, there is no allegation that Maritz discontinued Merrill Lynch's management after March 2012, when the assets were no longer collateralized and the alleged tying arrangement ended.

## II. Standing

Dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure is appropriate if the party asserting jurisdiction has failed to satisfy a threshold jurisdictional requirement. *See Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013). The plaintiff bears the burden of establishing standing. *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014) (party invoking federal jurisdiction has burden of proving standing). "To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Id.* at 2341 (quotation marks and citation omitted). "An injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (quotation marks and citation omitted). "[T]he actual-injury requirement may be satisfied *solely* by the invasion of a legal right that Congress *created*." *Hammer*, 754 F.3d at 498.

A "plaintiff generally must assert his own legal rights and interests, and

cannot rest his claim to relief on the legal rights or interests of third parties." *Glickert v. Loop Trolley Transp. Dev. Dist.*, 792 F.3d 876, 881 (8th Cir. 2015) (quotation marks and citation omitted). Further, "[a]n alleged injury cannot be too speculative for Article III purposes." *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (quotation marks and citation omitted); *see Annex Med., Inc. v. Burwell*, 769 F.3d 578, 582 (8th Cir. 2014). A plaintiff's "theory of standing, which relies on a highly attenuated chain of possibilities, . . . [and] which amounts to mere speculation . . . cannot satisfy the requirement that any injury in fact must be fairly traceable to" a defendant's statutory violation. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 (2013). A plaintiff therefore does not have standing to maintain a cause of action against a defendant where "[t]he existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts . . . ." *Lujan*, 504 U.S. at 562 (quotation marks and citation omitted). "[I]t becomes the burden of the plaintiff to adduce facts showing that those choices have been . . . made in such manner as to produce causation and permit redressability of injury." *Id.* In other words, "'mere speculation' that injury did or might occur 'cannot satisfy the requirement that any injury in fact must be fairly traceable to' the alleged source." *Wallace*, 747 F.3d at 1030 (quoting *Clapper*, 133 S. Ct. at 1148); *see also Lexmark*, 134 S. Ct. at 1386–88 (finding Article III's requirement of but-for causation satisfied where a plaintiff's lost sales were plausibly attributable to the defendant's alleged statutory violation but then proceeding to a proximate cause analysis).

"Each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of

evidence required at the successive stages of the litigation." *Driehaus*, 134 S. Ct. at 2342 (quotation marks and citation omitted). When determining whether to dismiss "a complaint for lack of standing," a court is to "constru[e] the allegations of the complaint, and the reasonable inferences drawn therefrom, most favorably to the plaintiff." *Glickert*, 792 F.3d at 880 (quotation marks and citations omitted). "Where, as here, the case has progressed only to the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [a court is to] presume that general allegations embrace those specific facts that are necessary to support the claim." *Hutterville Hutterian Brethren, Inc. v. Sveen*, 776 F.3d 547, 553 (8th Cir. 2015) (quotation marks and citations omitted).

### III. *Lexmark v. Static Control*

In *Lexmark v. Static Control*, the Supreme Court considered a claim of false advertising brought under the Lanham Act, 15 U.S.C. § 1125(a). 134 S. Ct. at 1383. Lexmark manufactured laser printers and the toner cartridges used in those printers. To encourage customers to return their used cartridges instead of selling them to a remanufacturer, Lexmark instituted the "Prebate" program that allowed its customers to receive a discount if they returned their empty cartridges to Lexmark. Lexmark also placed a microchip in its Prebate cartridges so that they could not be reused. Static Control was a supplier of toner and components used by toner cartridge remanufacturers. Static Control developed a microchip that could replace the microchip in Lexmark's Prebate cartridges, thus allowing remanufacturers to refurbish and resell them. *Id.* at 1384.

Lexmark sued Static Control for various copyright violations. Static Control

5

counterclaimed, asserting violations of 15 U.S.C. § 1125(a). *Id.* Specifically, Static Control alleged that Lexmark had "'purposefully mis[led] end-users'" to believe that they were legally obligated to return the Prebate cartridges after a single use; that Lexmark had "materially misrepresented 'the nature, characteristics and qualities' of Static Control's products by falsely stating that the sale of refurbished Prebate cartridges was illegal; and that Lexmark had led consumers and others to believe that Static Control was engaged in illegal conduct." *Id.*

The issue before the Supreme Court was whether Static Control had standing to assert a claim based on § 1125(a), which permits recovery "in a civil action by any person who believes that he or she is or is likely to be damaged by" a defendant's false advertising. 15 U.S.C. § 1125(a). Following conflicting decisions in the lower courts, the Supreme Court granted certiorari "to decide 'the appropriate analytical framework for determining a party's standing to maintain an action for false advertising under the Lanham Act.'" *Id.* at 1385.

Critically, and contrary to the litigants' position here, *Lexmark*'s analytical framework is not limited to Lanham Act claims. Rather, it "applies to all statutorily created causes of action." *Id.* at 1388. In other words, though *Lexmark* does not specifically address the issue of standing under § 1972(1), the decision articulates the precise framework by which the court is to answer that question in the instant case.

In *Lexmark*, the Supreme Court did not alter the well-established test for determining Article III standing. *Id.* at 1386 (citing *Lujan*, 504 U.S. at 560). The Supreme Court recapitulated *Lujan*'s holding that, "[t]he plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in

fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Id.* (quoting *Lujan*, 504 U.S. at 560). The Court found that Static Control's "allegations of lost sales and damage to its business reputation," caused by Lexmark's actions, were sufficient to "give it standing under Article III to press its false-advertising claim." *Id.* *Lexmark* thus calls for continued application of the principles of *Lujan* and its progeny to determine whether a plaintiff has Article III standing to maintain a claim.

Also, *Lexmark* announced a sea-change in the framework applicable once a court determines that a plaintiff has successfully pleaded Article III standing. *Id.* at 1386–95. The Court explained that the term "prudential standing," *i.e.*, "statutory standing," is "not derived from Article III" and "is a misnomer." *Id.* at 1386–87 & n.4 (quotation marks and citations omitted). Instead, where a plaintiff asserts a statutory cause of action and establishes Article III standing, a court must next "ascertain, as a matter of statutory interpretation, the scope of the private remedy created by Congress . . . and the class of persons who [can] maintain a private damages action under that legislatively conferred cause of action." *Id.* at 1386 (quotation marks and citations omitted).

To make that determination, a court must ask whether a particular "plaintiff has a cause of action under the statute" and must answer that question "using traditional tools of statutory interpretation . . . ." *Id.* at 1387–88. The "two relevant background principles" a court applies when conducting that statutory analysis are "zone of interests and proximate causality." *Id.* at 1388. Under the zone of interests test, litigation is foreclosed only when the plaintiff's "'interests are so marginally related to or inconsistent with the purposes implicit in the statute that

7

it cannot reasonably be assumed that' Congress authorized that plaintiff to sue." *Id.* at 1389 (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012)). Under the proximate cause inquiry, "[t]he question . . . is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Id.* at 1390.

The precise contours of the zone of interest and proximate cause inquiries do not warrant further explication here, however, because the Article III framework that *Lexmark* reemphasizes is dispositive.

### IV. Application of *Lexmark*

Applying *Lexmark*'s analytical framework, plaintiff's § 1972(1) claim fails because he has not established Article III standing. Even if the court were to find that the complaint plausibly states a violation of § 1972(1) resulting from the required transfer of the assets to Merrill Lynch, there still is no allegation that plaintiff suffered an injury because of the violation. The complaint is bereft of facts explicitly stating or from which it could reasonably be inferred that the § 1972(1) violation was a but-for cause of plaintiff's injury, *i.e.*, the loss of his client. *See Driehaus*, 134 S. Ct. at 2341 (citing *Lujan*, 504 U.S. at 560–61).

There is no allegation that InteliSpend had a contractual obligation to continue its broker-client relationship with plaintiff, whether before, during, or after his employment with defendant. Therefore, for plaintiff to have Article III standing to maintain a claim that the § 1972(1) violation was a but-for cause of his injury, the complaint would have to set forth facts plausibly suggesting: (1) that InteliSpend wanted to transfer its assets from Merrill Lynch to plaintiff after he resigned and thereby reestablish the client-broker relationship; and (2) that the

8

§ 1972(1) tying arrangement was a reason that InteliSpend did not do so.

The complaint does not say that, and the facts as pleaded do not give rise to a reasonable inference that that was the case. *See Clapper*, 133 S. Ct. at 1150 (explaining the Supreme Court's "reluctan[ce] to endorse standing theories that require guesswork as to how independent decisionmakers [have] exercise[d] their judgment"). Though the complaint alleges defendant threatened Maritz, it does not allege that Maritz communicated that information to InteliSpend, that Maritz forbade InteliSpend from acting, and, even if Maritz did, that InteliSpend had hoped to reestablish the broker-client relationship with plaintiff until it learned of the threat. *See id.* at 1148 (holding "reli[ance] on a highly attenuated chain of possibilities . . . cannot satisfy the requirement that any injury in fact must be fairly traceable to" a defendant's conduct); *Wallace*, 747 F.3d at 1030 (holding "an alleged injury cannot be too speculative for Article III purposes"). At most the complaint expresses plaintiff's hope that InteliSpend would follow him after he left defendant's employ. But, plaintiff's hope is not sufficient to establish a § 1972(1) violation. *See Driehaus*, 134 S. Ct. at 2341 ("An injury sufficient to satisfy Article III must be concrete and particularized . . . not conjectural or hypothetical." (quotation marks and citation omitted)). Finally, it is conceded that any tying arrangement ended by March 2012. The fact that InteliSpend did not thereafter reestablish its relationship with plaintiff runs counter to the contention that the tying arrangement prevented it from doing so.

For the above reasons, the court concludes that the allegations of the complaint are insufficient to establish that the alleged § 1972(1) violation was a but-for cause of plaintiff's injuries, and plaintiff lacks Article III standing to pursue

that claim. Because plaintiff has not met the Article III standing threshold, it is unnecessary to address the zone of interests inquiry described in *Lexmark*. Count I, the sole remaining claim, will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that the defendant's motion to dismiss Count I of the complaint is **granted**.

**IT IS FURTHER ORDERED** that all other motions are **denied as moot**.

An order of dismissal will be filed separately.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 19th day of February, 2016.